When you're ready, Mr. Chiang. May it please the court, my name is Jeff Shio, I represent... Shio, excuse me. The best man at my wedding got it wrong. I represent plaintiff appellant, Commander Judith Louise Cronin, United States Navy, retired. There are two fundamental legal principles that guide this case. First, military pay and benefits claims are governed by statute and regulation. And second, if an agency or military department establishes regulations in this area, they are binding upon the agency's conduct. Now, the very complicated promotion question at issue turns on one undisputed fact and one binding Navy regulation. The undisputed fact is that Commander Cronin was to be promoted on October 1st, 1994. Can I just interrupt you? Are you planning to talk about the statute of limitations jurisdictional question in your opening argument or wait until your rebuttal? Your Honor, I'm happy... Which may not involve very much time. I'm happy to rest on the breeze unless there are specific questions, Your Honor. Well, let me ask a specific question then. Well, one question is this. When Congress reenacted Repodified in 2003, are you aware of any evidence that it was aware, that Congress was aware of either Cruz or Mason? Your Honor, I don't have any knowledge about whether they were aware of that. However, in the Bickford decision, 1981, Court of Claims sitting on bunk said that applying Supreme Court precedent that always the tolling provision, not the entire Service Member Civil Relief Act, but its tolling provision must be interpreted broadly in favor of service members. And the Bickford decision itself invited Congress to make a change to the statute if it was interested in doing that. So since 1981, Congress was aware. And as is pointed out in the decision below... The fact that I guess I'm focusing on, and maybe incorrectly, in the statutory analysis that the government presents, a much more detailed, much more tied to specifics of the statutory provisions governing TDRL and whatnot than Judge Weinfeld addressed in the Cruz decision back in 1970. The point that is standing out for me right now is this. That when a member is placed on the TDRL, the military no longer has a claim on that member to return to duty. It's up, even if the disability ends, I want to confirm this, the member can say, I'm sorry, I'm not going back. Now, even if the initial placement on the list could be said an absence from a duty that up until that moment was present, as soon as they're placed on the TDRL, there's no longer a duty in the very particular sense that the military can say, you, by tomorrow morning, you're back here. Why does that not end the duty, which is a prerequisite to everything else? If I can make one factual correction, Your Honor, and then address your question. The factual question is that there is no right to recall the member to service. Every 18 months, every member that's serving on the TDRL must return for an investigation of his or her disability so that a determination can be made whether their condition... Whether the payment should continue. And when they do that, they're paid active duty pay for their efforts to get to or from the hospital to be investigated. But the reason that that doesn't matter, Your Honor, is because the statute and its tolling provision defines a period of military service as beginning on the date when a service member enters service and ending when they retire or are separated from the service. That ending point is one of several outcomes of the TDRL process. And so if we look back to 1959, the Comptroller General, looking at what was the TDRL, said it's sort of a limbo state. It is a period of time when any of several things could happen, but if a person is absent from duty, they're not relieved of their duties, Your Honor. And the reason that's important in the same low case, which is not this court's decision, but it's the Court of Federal Claims... How is this all affected by the truth that you have to either re-enlist or be reappointed to come off TDRL or go to permanent? Well, because... How does all that affect this? The events that determine the end of a, quote, period of military service, Your Honor, none of those events have occurred. The person is not actually separated from military service. They are in a limbo state, as, again, Comptroller General said in 1959. And the reason that that matters, the reason that the period of military service has to be one uniform arc that has a beginning date and an end date, is that if we took a different view, then let's say that Commander Cronin was placed on the TDRL in 1996, and then in 1997, a claim arose, either her claim or a claim against her arose, but she was on the TDRL. And then in 1998, she came back to military service. What is the statute of limitations on that claim that arose in that interim period? No one knows. And so that's the exact same reason that in the low case, where a Marine deserted the country as a fugitive with pounds of marijuana at an airport, brought back and thrown in the brig for seven years, that all was part of his period of military service. It has a beginning, it has an end, and no matter how inauspicious, the middle, there's one period of military service. That's what the statute calls for, and Vickford requires it. But that was a case in which the military did retain its power to order the man to come back into service. Right, Your Honor. But we can't have this on-again, off-again relationship where we don't know what the outcome of the service will be. But we do know, don't we, from the TDRL provision that says as soon as you're on that list, it's up to you whether to return. Your service in the sense of being subject to duty has in fact ended. I don't think that that's true, Your Honor, because as I said, you have to come back and submit to inspections. And in fact, if the result of this service is that you'll return to service, the regulations also in the law clearly require that you be promoted as if the period of military service, the period on the TRL never happened. You should not be penalized by this service. You happen to have either a statute or a regulatory citation. I would get that to you, Your Honor. It's certainly in my briefs below. I'm not sure if it's in this brief. I'll look for it if it's in the briefs below. It is in the briefs below, Your Honor. What's the implication of the Court of Claims' Kraft opinion, which said TDRL is a state of being separated from service? I apologize that I don't have the facts of Kraft at my fingertips, Your Honor. But all of the cases, as were distinguished in the court's decision below, very clearly stepped through why it was different. And if I can turn to the court's decision below, I can point out what it was. I recall the Dombrava case and others, but Kraft is not coming to mind right now, Your Honor. So I think that the opinion below and for the reasons stated in our brief, there is very clearly jurisdiction. To upset the jurisdictional scheme would be to say that we have no idea until the end of the TDRL what the statute of limitations is for any claims arising before. So Cruz's estate could not have known what his claims were going to be until the end of his period of military service. He clearly was not coming back to the military service, but that was the problem that the district court, Southern District of New York, saw in Cruz, Your Honor. Moving back to the one undisputed fact and the one Navy binding regulation that mattered to this case and the outcome of the promotion claim, the undisputed fact is that on October 1st, 1994, Commander Cronin was scheduled to be appointed and promoted. That date was set by the Secretary of the Navy. And the binding regulation, SECNAV Instruction 1420.1a, paragraph 23, says that a service member will be promoted on that date unless there is a timely delay. And I can pull out the actual language rather than try to quote it from memory. It says, 23C of SECNAV Instruction 1420.1a, notification of grounds for delay. The promotion of an officer may be delayed only if the officer has been given written notice of the grounds for the delay before the effective date of the appointment, unless it is impractical to do so. There was no finding below that it was impractical to do so, and in fact, the government never even argues that until their response brief here. Can I ask you a couple of questions about that? You proceed on the assumption, and I guess I just want to know on what basis, when the regulation says give notice, that that means receive notice. Why is that a correct assumption? I don't think that there could be any other interpretation with respect, Your Honor. If a person is not actually given notice, the whole intent and meaning of the word notice is that it's received, that it advises you of your rights that you could take some sort of action. Okay. The second question is, in the ordinary course, a regulatory violation on the assumption we have one is subject to a harmless error rule. Under the APA 706, it says take due account of the rule of prejudicial error. Yes, Your Honor. First of all, do you dispute that a harmless error inquiry is appropriate here? That's a fine inquiry, Your Honor. Okay. In what way was there some harmful error for the purposes of the notice because, in fact, she got her hearing? Okay. What's distinguishable about this case from the Barnes decision? Barnes was out to sea. He couldn't receive notice. They tried to give him notice. He was out to sea. He came back. He was notified. He got an opportunity to respond, and he was not promoted. This court said, sorry, it was impractical to give you prior notice. However, Commander Cronin was working at the Navy Yard on the BRAC program. She could have been given notice. So, on October 1st, when the SECNAP had set her date of appointment and her date of promotion, she was promoted or ought to have been, but she wasn't given any notice. So, on October 1st, she was Commander Judith Louise Cronin, not Lieutenant Commander, Commander Cronin on that day. And so, if the Navy wanted to come along, as it did five days later— What basis is there for that statement? Your Honor— Don't you have to be appointed after the procedures of designation and confirmation are complete? Two answers, Your Honor. First is that the uniform scheme that the Navy has set up, it is consistent with 10 U.S.C. 624, which was cited in the Dysart case and the Lewis case, and this court said, well, that's a legislative encroachment. You can't force the president to appoint someone. But the difference here is we're not relying upon statute. We're relying upon their own binding regulations, which this court's clear precedent, including Dysart and Barnes, say are binding upon an agency's conduct. Further, at Joint Offendics 82, there is Commander Cronin's service record. On October 1st, 1 October 1994, lined out is her promotion to commander. It happened. It happened on that date. And this is a fact that was ignored by the court below. The government has never responded to this. It actually happened that she was promoted, Your Honor. You never—Ms. Cronin never received a permanent appointment form, however, did she? That's right, Your Honor. But, you know, the Supreme Court said in Marbury v. Madison, the ministerial act of delivering a piece of paper does not withdraw the act. What happened in this case is that there was a uniform scheme set up for the promotion of military officers. Large bureaucracies do this all the time, Your Honor. They say, well, we've got to have a nomination. We've got to have confirmation. We want to have an appointment. And we want to do it all on October 1st because there are so many people. We don't want to be bothered by the details. If we're going to delay the promotion, we've set up, in fact, a rule to do that. And if we're going to do it, we've got to do it in writing before the day that it happens. That didn't happen here. So it's undisputed, undisputed fact and a binding Navy regulation, Your Honor. And so when we go back to the two fundamental legal premises, the first being that military pay and benefits are governed by statute and regulation, the harmless error analysis doesn't matter. I mean, when you apply the harmless error analysis, you find that Commander Cronin wins. Here's what happens in all these cases. If a service member fails to perform responsibility X, Y, or Z by a time certain, then he loses. And that seems like a harsh result in many circumstances. Here the tables are turned. The government didn't do what it was required to do. And yet it says that's fine. If you follow the rules, if you don't follow the rules, we win. If you follow the rules, we win. That can't be the way that a system of regulations works. This is a system of binding regulations consistent with the statutory scheme, and I think it's important to point out the government and the court below didn't give this much credence. But essentially a month before the government belatedly withdrew her promotion, they frocked her. They pinned on the rank of commander a post-confirmation action that said we would make you a commander today except for the limitations that are placed upon us by statute and regulation. We've got this uniform scheme. We've got to follow it. But you're commander Cronin now. She continued to serve, including the time that she was battling this. She was awarded her third gold star in lieu of a third medal, excuse me, a meritorious service medal, because she did a great job for the Navy, including as she was fighting for this. But they're saying, sorry, you're a lieutenant commander. We'll observe the remainder of my time. Okay. Fifteen seconds. Actually, I'll tell you what, we'll give you the rebuttal time back and Mr. Edelschrick can have an additional three minutes if he needs it. May it please the court. There is no dispute that Commander Cronin filed her claims more than ten years after they accrued. The trial court dismissed these claims on the merits and under judgment in favor of the United States. I'm sorry, not all of the claims, right? Because you do not make a limitations argument about the PTSD claim, do you? That's correct, Your Honor. The statute of limitations issues only pertain to all claims other than the disability claim for PTSD. And I would ask the court to understand my arguments with that. The Supreme Court in the Boone case told us we're supposed to read this act very broadly in favor of the servicemen. Is this an instance where we should follow that counsel? Well, Your Honor, there is a liberal construction, which is one thing, and there is an interpretive process that rewrites the statute. That is another thing. Here, Your Honor, while on the TDRL, there is no dispute that Commander Cronin was released from duty. She was retired, receiving retired pay and retired benefits. And as was pointed out earlier in the discussion, she could not be ordered back to duty without her consent. Can you address the point that your colleague on the other side mentioned about how if she had returned to duty, the period while she was on the TDRL list would be treated as if she were in service for promotion and maybe other purposes? For promotion and maybe other purposes, I'm not sure about that, Your Honor, but I am sure for one thing that that is not the case for purposes of the statute of limitations. Here it is clear that Commander Cronin was not performing military service while she was on the TDRL, and the FCRA holds the statute of limitations during periods of military service. Now, you can be separated while you're on the TDRL. So you're not already separated, right? I'm sorry. Well, I'm looking at the statute. Of course, it's talking about released if not separated, and the TDRL regulations themselves say you can be separated while you're on the TDRL. So it sounds to me like you're not separated when you're on the TDRL. As the Kraft decision states, when you are on the TDRL, you are indeed separated from the military because unlike someone, say, who has been transferred to the fleet reserve and who's on inactive status, not performing any duties, they can be recalled in a national emergency. Someone on the TDRL, they are retired, and under the precise terms of the statute, they cannot be ordered back to duty absent their consent. The military no longer exercises control. I'm not sure you've quite addressed the Chief Judge's question. Is there a regulation that contemplates that somebody already on the list can be separated from the military, and if there is, doesn't that in fact count against the notion that getting onto the list is itself a separation? I'm sorry, Your Honor, I'm not aware of such a regulation. I don't believe it's been cited in the papers. Can I ask? There is a process, just to follow up on that, there is a process, if there not, at the conclusion of the TDRL period, if you will, where there is some processing that takes place and a permanent disability retirement status is then put in place. Yes, indeed. And so there's a distinction, is there not, between the TDRL and a permanent disability retirement. That's right. And if one is already retired, then why would there be a basis for that distinction? The main difference between being on the TDRL and the permanent disability retirement list is that if, when the service member is being retired, their condition is permanent and stable at that time, they can be immediately transferred to or placed on the permanent disability retirement list. But if their disabling condition is such that it is not permanent and stable, it could get worse, in which case the service member wants to be protected. It could get better, in which case the government wants to be protected. So there's this temporary disability retirement period of five years where we watch the disabling condition. And if it gets better, there's a menu of scenarios that can take place. If it gets worse, a similar menu of scenarios. But in either case, we just don't know what the permanent disability rating is going to be. And so that's the purpose of this interim period. But in all senses, in terms of status, there is no limbo here. Commander Cronin was retired upon placement on the TDRL, and she no longer performed any duties or had a duty post from which to be absent. Can I ask you, suppose that she were in a coma for the six-year period. Is it six years under 2501? Five years. Five years. What then? I'm thinking, obviously, of a variation on the facts that clearly influenced, to some extent, Judge Weinfeld's opinion in Cruz, where the man was in the hospital, I guess, if I remember right, in a coma for maybe some, I think we're not quite sure, of the time he was on the TDRL. So change this into a hypothetical. Suppose she's in a coma for five years on the TDRL. Is there some way in which the limitations period doesn't run? Well, if we were outside of the context of suits against the government, where there's sovereignty. But I'd like, actually, an answer to both versions. But start with the General Motors situation.  I promise I'm going to answer your question. Outside that context, you have equitable tolling principles, which may come into play, such as, I was in a coma in the hospital for five years. So that's what might have protected Mr. Cruz in that case, even if the statute didn't. Indeed. And the government was not a party in Cruz, and so that should not have been an animating concern. Whereas here, we don't have those equitable considerations available under John R. Sandlin Gravel. So what we do have here is a legal tolling provision, the SCRA. And it tolls only during periods of military service. Now that includes periods... Just so I'm clear. Your answer is, if, putting aside this statute, somebody in this position suing the United States, who gets beyond the five-year mark, if completely unable to have filed because she was not conscious the whole time, she's just out of luck. This statute... Sometimes things like that, there are harsh results. I'm just trying to understand if that's your position. The relief afforded in the SCRA would not address that situation, Your Honor. Now, earlier I asked a question about separation. There was a DD-214 form which showed separation. Yes, Your Honor. It's at 104 and 105. What's the effect of that, and what's the procedure under which separation would occur while you're on TDRL? The purpose of the DD-214 is to signify a change in status. And the DD-214 in this case unambiguously states the effective date of Commander Cronin's retirement is June 1st of 1994. So that was the change in her status. There's no ambiguity. There's no limbo in the DD-214. So we respectfully submit that the natural... It doesn't really have any legal effect, right? It is evidence of the change in status. Aside from that... Okay, I got it. Now, we respectfully submit that the natural reading of the SCRA to toll during periods of military service, which in turn is defined as periods of active duty and lawful absences from duty. Did I ask you already the question I asked about possible congressional ratification in 2003 of what, as far as I think I'm right in saying, are the only two precedents, namely Cruz and Mason, that existed at the time on the TDRL question?  No, Your Honor. And there is no evidence that Congress was aware of Mason or Cruz. This is... Language issue? No, Your Honor. This language that is in the current iteration of the statute is the exact same language that was in the 1940 iteration of the statute and the 1918 iteration of the statute. So this is language that's been around a long time. Not quite the same as the 1918. If I remember right, you had a footnote explaining how there was a phrase that was... Slight differences, but the verbiage about lawful absences from duty has essentially remained unchanged. Sometimes when Congress simply reenacts language and doesn't just... It's one thing if they just leave it alone and time goes by. That's very hard to make a ratification argument. Ratification arguments are always hard to make, but here there's an actual reenactment, and I guess I just wanted to be sure that I wasn't missing any evidence about what Congress knew in 2003 with respect to, I think, the only two precedents on the subject. No, there was no evidence whatsoever in the legislative history that there was any intent to ratify Mason or Cruz. Mr. Edelsheik, is there... Could you address briefly the effect of the late notice and the passage of the time when the appointment was supposed to become permanent? Indeed, Your Honor, and I think context matters here. Ms. Cronin was scheduled to be promoted to commander effective October 1st of 1994. For about a year leading up to that time, she was in a limited duty status because she was not physically able to perform all of her duties. Before you can be promoted, you have to have a physical examination. That physical examination, in this case, took place in August of 1994, and the medical officer determines that Commander Cronin was not fit for promotion. So that, in turn, got communicated to a medical board, which, in turn, communicated to personnel all during this August-September timeframe, leading up to a September 30th letter, J.A. 83, notifying Commander Cronin that her promotion was going to be delayed because there was cause to believe that she was unfit for duty. And so, the notice issue. The regulations provide that, in general, it's best to give notice in advance before the scheduled promotion date, unless it's impractical to do so. Do you agree that give notice means notice has to be received, or sending it out on a Pony Express, a reasonable Pony Express? You raise a very interesting issue, Your Honor, because the only evidence in the record is a letter stated September 30th and somewhat differing dates, depending on which proceeding we've been in, as to when Commander Cronin says she actually opened the letter. But nowhere is there any suggestion by the plaintiff that the postmark on that September 30th communication was something other than September 30th. But is there a settled meaning, as a regulatory matter, what give notice means? There's no settled meaning, Your Honor, but we would suggest that this issue is probably neither here nor there in this particular case because what happened is there's no dispute that Commander Cronin did, in fact, receive all the notice to which she was entitled within a matter of days after the letter was sent. And with two weeks later… Was she already appointed at that point? No, Your Honor, because the promotion had been delayed. As a very technical matter, when you say the promotion had been delayed, what act was it that delayed it, the sending of the letter? Yes, Your Honor. And had the letter not been sent, how would the promotion have occurred? It would have occurred, as the trial court found, as a matter of fact, that the standard procedure for effectuating promotions is the delivery of an appointment form which includes an acknowledgment by the officer that they are accepting the promotion. There was still a physical step that had to be taken that was, in fact, never taken. Absolutely, Your Honor. And the form has the oath, which is a very… I remember recently waiting for that step. So taking the oath of the office you're about to enter is a very significant step. That never happened here. And just to get back to the notice question and put a fine point on it, a few weeks after Commander Cronin admits she got the letter, she submitted all of her arguments. No action was taken by the Navy in the interim. A couple of weeks, she was able to make all of her arguments, and under this court's precedent in Barnes, under very similar circumstances, the court essentially said no harm, no foul. The September 30th, 1994 letter references a medical finding that was not announced until October 5th. Is that a prejudicial discrepancy in your case? No, Your Honor. Here we get into competing inferences. The letter itself, as you point out, refers to a medical board conducting a review and making a recommendation, but it makes no reference to a written report from the medical board, which, as the record demonstrates, actually became what was issued four or five days later. So there were competing inferences that could have been drawn from this document. Commander Cronin argued in the trial court, we should make an inference that there was fact-dating, that this was done after the MEB issued its final report. But another inference that could be drawn plausibly from this document is that the medical board communicated the fact of its review and the fact of its recommendation to the author of this document prior to the issuance of the final report, and in choosing between those plausible inferences, the trial court chose the inference of regularity as opposed to an inference of impropriety. And that's not a choice of inferences that should be disturbed by this court. All right. Thank you, Mr. Adelstein. Thank you. Mr. Hsiao, we've restored three minutes for you. Thank you, Your Honor. Your Honor, as I said before, the facts that actually matter are undisputed. Whether or not the letter was fact-dated doesn't matter. It actually doesn't matter. The date on it was September 30, 1994. There is no postmark in the record. That's not a real fact. The facts that matter is that letter was dated September 30, 1994, and it has never been disputed that she opened it on October 14th and that October 5th is a date after she was appointed to be promoted by the Secretary of Navy in the ordinary course by his own binding regulation. Your view is that the appointment did not require a new physical act. It was by operation of law, namely the regulations. It's by operation of regulation, Your Honor, yes, because there is no statutory, regulatory, or other requirement that says you must sign a piece of paper. That just doesn't exist, and the agency has never pointed to one. They say that, in fact, the court below relied upon the fact that that's the way it had happened in the past. Well, that's great, but even more, Your Honor, it doesn't have to be a promotion by operation of regulation. This court has found in Dysart and in Lewis and Barnes that a member can be given back pay if their promotion was withheld due to error by a subordinate officer. That's what happened here. That's why she was not, if she was not promoted, it was only because of these errors of law, Your Honor. I understand that you have two different arguments. One is she actually was promoted, and the other is even though she wasn't, that was legally incorrect, and therefore what she had to do was promote it, but those are two quite separate things. They are two quite separate things. So the binding regulation that matters to the first issue, that she was actually promoted in the ordinary course by the Navy's own binding regulations, SEC NAV instruction 1420.1A. The separate MilPERS man 2220150, it's all in our papers, Your Honor, says that she had to be in one of five conditions in order to be found unfit for promotion. None of those five conditions existed on October 1, 1994. The record is very clear that none of those five conditions existed. On October 5, they did exist, and that's why the harmless error analysis matters. If her promotion is not illegally withdrawn, delayed on October 1, she's a commander on October 5, and she doesn't care. You're not going to promote me to captain? Fine with me. But she's already a commander. Now, if the President had stepped in and said you're an officer at will and I'm going to make you a lieutenant commander, that could happen, and that would change the circumstances. That never happened here. Her name was never removed from the promotion list. Never happened. They delayed her promotion illegally out of, in violation of their own binding regulations, which this Court has said time and time and time again can be the basis for a military officer's claim. I would point out, Your Honor, that the statutory references that we talked about are at A62, which is the Court's decision below. Are there no further questions, Your Honor? Thank you, Mr. Schell. That concludes our morning. All rise. The Honorable Court is adjourned from day to day.